Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 5257 | DATE | August 23, 2000 |
| CASE TITLE | Rita Snorton v Janet Reno | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered.
Accordingly, defendant's motion for summary judgment is granted.

(11) ☐ For further detail see order attached to the original minute order.

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | AUG 2 4 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 AUG 23 PM 1:20 | date mailed notice | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RITA SNORTON, | )<br>) |
| Plaintiff, | )<br>) No. 98 C 5257 |
| v. | )<br>) Judge Robert W. Gettleman |
| JANET RENO, Attorney General of the United States, | )<br>)<br>) |
| Defendants. | ) |

DOCKETED
AUG 2 4 2000

## MEMORANDUM OPINION AND ORDER

Rita Snorton, Plaintiff, filed a complaint against Janet Reno, Attorney General of the United States, and Doris Meissner, Commissioner of the Immigration and Naturalization Service alleging employment discrimination based upon plaintiff's age, color, national origin, race and gender pursuant to the Age Discrimination Employment Act (ADEA), 29 U.S.C. §621 and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e. Plaintiff specifically alleges that defendants failed to promote her and failed to address her training needs. Doris Meissner was previously dismissed by agreement, leaving the attorney general, as the ultimate head of the agency (the Department of Justice), as the sole defendant. 42 U.S.C. § 2000e-16(c). The attorney general has now moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, the court grants the motion.

### Facts

Plaintiff, an African-American female, is employed by the Immigration and Naturalization Service ("INS") in Chicago, Illinois. Plaintiff alleges discrimination against her on account of her age, color, national origin, race and gender in 1992 when she applied for a

promotion at the age of 42 to become an Immigration Inspector ("Inspector") but other candidates were given the available Inspector positions. Plaintiff claims that discrimination is the root cause of her failure to pass INS Inspector training and her failure to be promoted to the position of Inspector. Plaintiff filed a complaint against the INS with the Department of Justice and timely appealed the final agency decision with the Equal Employment Opportunity Commission . After the Commission found no evidence of discrimination, plaintiff filed her complaint in this court on August 24, 1998.

Plaintiff began working at the INS in 1981 and was accepted to attend the Federal Law Enforcement Training Center ("FLETC") for the position of Inspector in 1988. In order to fulfill a promotion to Inspector, all persons must successfully complete the Immigration Officer Basic Training Course ("IOBTC") held in Glynco, Georgia. This basic training course includes instruction in language, immigration law, nationality law and general knowledge courses such as a FLETC course. All candidates must achieve a passing mark in each of the areas of instruction in order to successfully complete the IOBTC and assume duties as an Inspector. Plaintiff attended the IOBTC for thirteen weeks but failed the FLETC portion of the training in 1989. Specifically, plaintiff failed to pass the Practical Pistol Course ("PPC") portion of the Firearms Training included in the FLETC. Moreover, plaintiff's score for the PPC was too low to pass after she received ten hours of remedial training to raise her score to a passing level. Plaintiff was initially placed in a high level Spanish class but eventually transferred to a lower level Spanish class six weeks into her IOBTC training. Plaintiff alleges that she failed IBOTC training because she was not given pre-academy training, was misplaced in a high level Spanish class and

was not accorded certain procedures when she was terminated from the Academy because of her age, gender and race.

As a result of plaintiff's inability to achieve a passing score in the FLETC, plaintiff was counseled on March 31 and May 3, 1989, that she was nearing a point where it would be mathematically impossible for her to achieve a passing grade average in IBOTC. Prior to attending the IBOTC, plaintiff was advised on February 21, 1989, that she needed to achieve a passing grade, 70%, in each of the areas of instruction. In plaintiff's letter of termination from the Chief of the Immigration Office Academy on May 18, 1989, plaintiff was informed that her overall average was 68.75% and that she was discharged from the academy to return to her official station in Chicago, Illinois by May 22, 1989. Plaintiff was reassigned to the position of Investigative Assistant, which is plaintiff's current position with the INS.

In 1992, plaintiff applied for one of nine openings for Immigration Inspector. While plaintiff was listed second on the selection certificate for the positions, she was not promoted. Seven of the positions were filled with external hires while two positions were filled with current INS employees. Four of the nine positions were filled with women. Mr. Glenn Norton and Ms. Kathryn Coyle were the two internal INS employees selected for the Inspector positions. Mr. Norton, who was ranked number one on the selection certificate, was already an Inspector based in Honolulu, Hawaii. Ms. Coyle, the fourth candidate on the selection certificate, was a temporary GS-9 Inspector at the Chicago O'Hare airport and was over 40 years old at the time she was selected for the permanent GS-7 Inspector position.

Plaintiff's 1992 performance appraisal as an Investigative Assistant was "excellent." Mr. Norton's 1992 performance appraisal as an Inspector was "excellent," while Ms. Coyle's 1992

3

performance appraisal as an Inspector was "fully successful." Mr. Norton and Ms. Coyle were recommended as candidates by Assistant Director Shirley Roberts (Roberts) to the Selecting Official, District Director Alvin D. Moyer (Moyer). At the time of the recommendation, Roberts and Moyer were acting under a directive from the INS Acting Regional Commissioner of the Northern Region to be very cautious about re-nominating individuals who have failed IBOTC training for the next available IBOTC training without ascertaining that the candidate is the best available candidate. This directive stated that re-selection of previously unsuccessful trainees is expected to be rare. Roberts and Moyer were aware of another hiring directive, issued on May 11, 1992, which lead them to believe they could not promote internally. The directive stated that 90% of the Inspector positions should be filled with people from outside the INS. The directive allowed for 10% of the positions to be filled with transfers and other approved exception requests.

## Discussion

### Summary Judgment Standard

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir.1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed.R.Civ.P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir.1990). The court considers the record

as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir.1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir.1993). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. See Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

Title VII Discrimination Standard

To set forth an individual case of intentional discrimination under Title VII, a plaintiff has two options: she may satisfy her burden of proof by offering direct evidence of discriminatory intent; or she may demonstrate such intent indirectly by following the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, plaintiff must first establish a prima facie case by showing that: (1) she was a member of a protected class; (2) she was doing her job well enough to meet her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated differently than members of the unprotected class. See Hughes v. Brown, 20 F.3d 745, 746 (7th Cir.1994).

5

If plaintiff succeeds in establishing a prima facie case, she creates a rebuttable presumption of discrimination and the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the employment decision. If the employer is successful, the presumption of discrimination dissolves, and the burden shifts back to the employee to prove that the employer's proffered reasons are a pretext for race discrimination. See Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir.1994). Plaintiff can satisfy the pretext burden by showing "either a discriminatory reason more likely motivated the employer, or that the employer's proffered explanation is unworthy of credence." Robinson v. PPG Industries, 23 F.3d 1159, 1163 (7th Cir.1994). At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him. See Hughes, 20 F.3d at 747.

Plaintiff has established all four elements of the McDonnell Douglas burden-shifting framework on her race based claim. First, she is an African-American and thus a member of a protected class. Second, she was doing her job well enough to meet her employer's legitimate expectations because her performance appraisal for 1992 was excellent as an Investigative Assistant. The Seventh Circuit has held that "[a] determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case, may be based solely upon the employee's testimony concerning the quality of his work." Williams v. Williams Elec., Inc., 856 F.2d 920, 923 n. 6 (7th Cir.1988); see also Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 512 (7th Cir.1986) ("[plaintiff]'s testimony that the general quality of his work was satisfactory is sufficient to establish that he met the legitimate expectations of his employer"). The Seventh Circuit, however, has also stated that

"neither <u>Williams</u> nor <u>Yarbrough</u> stand for the blanket proposition that every plaintiff who claims that his or her work performance was satisfactory meets <u>McDonnell Douglas</u>' second element." <u>Oates v. Discovery Zone</u>, 116 F.3d 1161, 1172 (7th Cir.1997). "Such an interpretation," the court found, "would effectively render that element meaningless." <u>Id.</u>

In the present case, presumably individuals are promoted from the position of Investigative Assistant to Immigration Inspector. Otherwise, plaintiff would have never made the initial selection certificate for the positions. Thus, the fact that plaintiff was placed on the list for promotion indicates that she was a competitive candidate for the position. Plaintiff has met the second element. Third, plaintiff suffered an adverse employment action because she was not promoted to Inspector. Finally, she was treated differently than a member of the unprotected class. Plaintiff and Ms. Coyle are similarly situated in that they are both employees of the INS, they are both women over 40 and they were in competition for the same position. While defendant argues that plaintiff and Ms. Coyle were not similarly situated because Ms. Coyle did not receive a promotion per se, defendant's argument fails to recognize the tangible benefit in becoming a permanent (as opposed to a temporary) federal employee. Thus, the permanent Inspector position represented a promotion to both plaintiff and Ms. Coyle. Plaintiff establishes the fourth element and creates a rebuttable presumption of discrimination.

Defendant has raised two legitimate and non-discriminatory reasons for not promoting plaintiff. First, plaintiff was not the most qualified candidate for the position. The defendant simply did not consider plaintiff's performance appraisal as an Investigative Assistant to be superior to the performance appraisals of Mr. Norton and Ms. Coyle as Immigration Inspectors for the available positions of Immigration Inspector in Chicago. Second, Roberts and Moyer felt

7

they could not select plaintiff because of directives from their headquarters. The first directive, issued in 1991, was against recycling candidates who had failed IBOTC unless they were competitively selected to be the best candidate for the position. While Roberts and Moyer had not received the second directive by the time the selection decision was made, they knew enough about the directive issued on May 11, 1992, to believe that they should not promote internally. Although this court considers the transition from a temporary employee to a permanent employee to be a promotion, it is undisputed that defendant did not believe that, and "this court does not sit as a super-personnel department that reexamines on entity's business decisions." Dale v. Chicago Tribune Co., 797 F.2d 458, 4646 (7th Cir. 1986).

With two legitimate and non-discriminatory reasons for the defendant's decisions to promote Mr. Norton and Ms. Coyle, the burden shifts back to plaintiff to establish that these reasons were a pretext for discrimination. Plaintiff must prove that "a discriminatory reason more likely than not motivated the employer or that the employer's proffered explanation is incredible." Oxman v. WLS-TV, 846 F.2d 448, 453 (7th Cir.1988). Pretext means "a lie, specifically a phony reason for some action." Russell v. Acme-Evans Co., 51 F.3d 64, 65 (7th Cir.1995). The court should not be concerned with whether the employer's decision was wise, logical, prudent, ill-informed, ill-considered, or inaccurate. The issue in a Title VII case is not whether the employer's reason is correct, but whether the employer honestly believed it to be true and acted on that belief. See Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1303 (7th Cir.1991). Stated another way, "The question is not whether [defendant] exercised prudent business judgment but whether [plaintiff] has come forward to refute the articulated, legitimate

reasons for [her] discharge." Wolf v. Buss (America), Inc., 77 F.3d 914, 919 (7th Cir.1996) (citations and quotation marks omitted).

In a Title VII case, evidence that an employer treated the plaintiff less favorably than a similarly situated employee outside the plaintiff's class may suggest that the employer's proffered reason is a pretext for discrimination. See Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1311 (7th Cir.1997). Plaintiff has presented evidence that one similarly situated individual was treated differently than herself. Ms. Coyle is female and was over the age of 42 at the time Roberts decided to recommend her over the plaintiff. Contrary to plaintiff's assertions, Mr. Norton was not similarly situated to plaintiff because he was the number one candidate on the selection certificate and was already a permanent Inspector in Hawaii. Mr. Norton was not promoted. He was simply reassigned to the Inspector position in Chicago.

To establish that Ms. Coyle's promotion was a pretext for discrimination, plaintiff relies heavily on a 1993 report by the INS Commissioner's Equal Opportunity Task Force ("Task Force") which found an under representation of African American employees. Plaintiff argues that the INS Task Force report could lead a finder of fact to conclude that the promotion of Ms. Coyle was part of the underrepresentation of African-Americans and the limited effort of INS personnel to target, recruit and hire African-Americans for officer positions. The report, which was based on interviews, does not present evidence of other cases of discrimination like plaintiff's case, because the Task Force's purpose was not to address individual concerns or complaints but rather to hear anecdotal information related to the EEO environment. The leap in logic from the Task Force report's finding of underrepresentation to specific discrimination against plaintiff is too large to bridge. The Task Force report does not present a large enough

9

sample of analogous cases to make out a pattern or practice claim, as plaintiff contends. See Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir.1996) ("Our opinions emphasize the need to get beyond a few comparison cases and we cannot stress this point enough.") (citations omitted).

Plaintiff has the "ultimate burden of persuasion to prove, by a preponderance of the evidence, that the employer intentionally discriminated against her." Johnson v. University of Wisconsin-Eau Claire, 70 F.3d 469, 478 (7th Cir.1995). Plaintiff has offered no evidence to refute Roberts' decision to value the performance appraisal of Ms. Coyle over the performance appraisal of plaintiff and conclude that Ms. Coyle was more qualified. Plaintiff's argument would be on firmer ground had Ms. Coyle held the same type of position with the same type of duties as plaintiff. That Ms. Coyle was already performing the duties of an Inspector and was thus reasonably more qualified to fulfill the duties of an Inspector has not been refuted by the plaintiff. Moreover, plaintiff has not refuted the proffered reason that both Roberts and Moyer were under the impression that they were discouraged from selecting plaintiff by the recycling memo and the hiring directive. The Task Force report does not attack any of defendant's proffered reasons for the decision not promote plaintiff. Accordingly, this court finds that plaintiff has not met her burden.

Denial of training

Plaintiff could meet her burden of proving her Title VII claim that her failure of IBOTC was caused by discrimination by presenting direct or circumstantial evidence that her color, national origin, race and gender were determining factors in the decisions made by the defendant, or by using the indirect burden shifting method of proof under McDonnell Douglas if her complaint was timely. However, plaintiff's claim of discrimination during her training in 1989 is

10

time barred. It is well settled that a federal employee suing under Title VII must notify an EEO counselor of any discriminatory conduct within 45 days of the alleged discrimination. See 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."). This deadline operates as a statute of limitations. See Johnson v. Runyon, 47 F.3d 911, 917 (7th Cir.1995). Thus, plaintiff's claim alleging discrimination during her 1989 Inspector training is time barred because it was filed well after 45 days of her discharge from the training academy.

Even if plaintiff had timely contacted an EEO counselor after her discharge from the training academy, plaintiff has presented no evidence that she was not given pre-academy training, if such training ever existed. Additionally, plaintiff has presented no evidence of how or why her performance at IBOTC training was detrimentally affected by not receiving pre-academy training other than an inference that she was nervous on her first day at the academy. In addition, plaintiff has presented no evidence that the reason for her placement in a high level Spanish class was anything other than the fact that she had a high score on the placement test. Nor has she presented any evidence that the testing method of the INS academy is defective. Plaintiff was ultimately moved into an easier Spanish class which allowed her to obtain a passing grade in her language instruction. Whatever defect there may have been in the placement test was cured through subsequent measures to place plaintiff in a different Spanish class.

Finally, plaintiff has presented no evidence that she was not accorded certain procedures when she was terminated from the Academy. Plaintiff received a letter of termination from the Academy Chief after she received counseling, remedial training and two retests for the PPC

11

training. Plaintiff signed the Firearms Division Remedial Referral sheet twice, once to acknowledge advisement of the program and once for the remedial test scores. This court concludes the plaintiff received all necessary procedures to afford her the best chance to obtain a passing score for the FLETC portion of the IBOTC training.

Age Discrimination

Plaintiff may meet her burden of proving the merits of her ADEA claim either by presenting direct or circumstantial evidence that her age was a determining factor in the employment decision, or by using the indirect burden-shifting method of proof for Title VII cases set forth in McDonnell Douglas. Plaintiff has alleged that a similarly situated younger person was treated differently, but this allegation is not supported by any facts because no similarly situated younger person was promoted to plaintiff's detriment. Therefore, plaintiff has failed to raise a prima facie case of discrimination based upon her age for either claim of failure to promote or failure to train.

## Conclusion

For the above stated reasons, the court grants defendant's motion for summary judgment.

**ENTER:** **August 23, 2000**

_____
**Robert W. Gettleman**
**United States District Judge**